UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVIDENT WEALTH ADVISORS, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.); JOHN HANCOCK FINANCIAL SERVICES, INC.; JOHN HANCOCK FINANCIAL NETWORK, INC.; SIGNATOR INVESTORS, INC.; SIGNATOR INSURANCE AGENCY, INC.,<br><br>                    Defendants. | CIVIL ACTION NO.: |

**CLASS ACTION COMPLAINT**

1.      Plaintiff Provident Wealth Advisors, individually and on behalf of all others similarly situated, by its undersigned attorneys, alleges the following upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through its attorneys, which included, without limitation:  (a) review and analysis of certain press releases, public statements, and other publications disseminated by or concerning the defendants named herein and related parties; (b) review and analysis of websites of the defendants named herein; and (c) review and analysis of certain other documents and materials concerning the defendants named herein, including newspaper articles and trade periodicals.  Many of the facts supporting the allegations contained herein are known only to the defendants named herein and/or are exclusively within their custody and/or control.

Plaintiff believes that further evidentiary support for its allegations can be obtained after a reasonable opportunity for discovery.

## INTRODUCTION

2.      As described below, Defendants John Hancock Life Insurance Company (U.S.A.) ("JHLI"), John Hancock Financial Services, Inc. ("JHFS"), John Hancock Financial Network, Inc. ("JHFN"), Signator Investors, Inc. ("Signator Investors"), and Signator Insurance Agency, Inc. ("Signator Insurance") (collectively, "John Hancock," the "Company," or "Defendants") work together to market and sell life insurance products.  Rather than selling its products directly to the public, John Hancock utilizes a network of 1,900 general agents that, in turn, recruit and affiliate numerous additional "sub-agents" to sell the Company's products on a contractual commission basis.

3.      During the Class Period, unlike other comparable insurance companies, John Hancock did not pay its sub-agents directly when they earned commissions, but rather made those commission payments to one of the Company's general agents, who, in turn, was required to pay respective sub-agents pursuant to the non-discretionary terms of John Hancock's sub-agency commission structure.

4.      Despite having received complaints about general agents failing to pay commission payments owed to sub-agents, at all relevant times John Hancock maintained its unusual practice of utilizing general agent intermediaries to pay sub-agent commissions.  Worse still, John Hancock failed to oversee the Company's general agents to ensure that they made the commission payments due to the Company's sub-agents.

5.      Plaintiff Provident Wealth Advisors ("Plaintiff" or "Provident") has been a John Hancock sub-agent since approximately 2001.  Provident recently discovered that it had not been

paid commissions owed to it for the years 2010 - present.  Further investigation revealed that those commission payments were withheld by a John Hancock general agent as a result of the combination of John Hancock's lack of internal controls, failure to oversee its general agents and/or failure to ensure that Plaintiff received the commission payments owed to it.

6.      Plaintiff discovered that it was not the only victim of John Hancock's failure to pay sub-agent commissions and/or supervise its general agents to guarantee that such payments were made.  Plaintiff discovered other John Hancock sub-agents whose commission payments had been withheld by a John Hancock general agent during the period from 2010 to present. Given the breadth of John Hancock's network of general agents and sub-agents, Plaintiff believes that commission payments have been withheld from numerous other sub-agents as a result of John Hancock's failure to fulfill its contractual obligations to its sub-agents and/or lack of internal controls and failure to supervise its general agents to make certain that such commission payments were made.

7.      Therefore, as a result of Defendants' actions, Plaintiff and other members of the Class have suffered significant damages.

## PARTIES

8.      Plaintiff Provident is a Delaware Limited Liability Company, headquartered in Great Neck, New York.  Plaintiff is a registered sub-agent of John Hancock who sells the Company's insurance products on commission.

9.      Defendant JHLI is a Michigan corporation headquartered in Boston, Massachusetts.  At all relevant times, JHLI was actively involved in designing, marketing, distributing and selling insurance products in the United States.

3

10.     Defendant JHFS is a Delaware corporation headquartered in Boston, Massachusetts.  At all relevant times, JHFS was actively involved in designing, marketing, distributing and selling insurance policies and other financial products in the United States.

11.      Defendant JHFN is a Massachusetts corporation headquartered in Boston, Massachusetts.  At all relevant times, JHFN was actively involved in designing, marketing, distributing and selling insurance policies and other financial products in the United States.

12.     Defendant Signator Investors is a Delaware corporation headquartered in Boston, Massachusetts.  Signator Investors is the broker-dealer for JHFN.

13.     Defendant Signator Insurance is a Massachusetts corporation headquartered in Boston, Massachusetts.  Signator Insurance is a wholly-owned indirect subsidiary of JHLI and is an insurance agency licensed and appointed to sell insurance products issued by JHLI and its insurance affiliates.  Together with Signator Investors, Signator Insurance is hereinafter referred to as "Signator."

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because the amount in controversy for the Class is thought to exceed $5,000,000, exclusive of interest and costs, and because it is a class action in which the named plaintiff is a citizen of a state different from all Defendants.

15.     This Court has personal jurisdiction over Plaintiff because it submits to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants because they conduct substantial business in the District.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and because corporate

4

defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

## SUBSTANTIVE ALLEGATIONS

### I.   John Hancock Uses General Agents To Pay Sub-Agent Commissions

17.    Among other financial product lines, John Hancock markets and sells a wide variety of insurance products.  John Hancock does not, however, sell any such products directly to the public.  Instead, working in conjunction with Signator, John Hancock sells its insurance products solely through the approximately 1,900 members of JHFN, a nationwide network of independent businesses that act as general agents of John Hancock ("General Agents").

18.    In addition to selling John Hancock insurance products, the General Agents also facilitate contractual relationships between John Hancock and other individuals or entities seeking to market and sell John Hancock insurance products.   At all relevant times each individual or entity seeking to establish such a relationship with John Hancock had to submit an application through a General Agent and, if approved by John Hancock, enter into a form sub-agency agreement prepared by John Hancock.  At all relevant times, John Hancock alone made the final decision as to which individuals or entities eventually were approved through that process to sell its insurance products, hereinafter referred to as "Sub-Agents."

19.    At all relevant times the material terms of John Hancock's form sub-agency agreement were substantially the same.  Under the terms of John Hancock's form sub-agency agreement, the Company agreed to pay Sub-Agents certain amounts as commissions on all insurance products they sold.  In particular, John Hancock agreed to pay an "initial" commission in the year of the actual sale of a given policy and a "residual" or "renewal"  commission for each subsequent year that the policy remained in force or renewed.

20.     John Hancock's sub-agency contracts, or documents incorporated therein, set the standardized terms for both initial and residual commissions that Sub-Agents earned and were to be paid on the sale of John Hancock insurance products.  John Hancock alone was responsible for setting the value of all initial and residual commissions on the sale of the Company's insurance products.

21.     Under John Hancock's form sub-agency contract – and contrary to the usual practice in the insurance industry – John Hancock did not make sub-agent commission payments directly to its Sub-Agents.  Rather, John Hancock paid those commissions, respectively, to the General Agents through which Sub-Agents established their business relationship with John Hancock.  Each of those General Agents, in turn, was responsible for making commission payments to respective Sub-Agents according to the terms set forth in the John Hancock sub-agency contracts.

22.     Moreover, and also contrary to industry practice, John Hancock did not prepare and disseminate to Sub-Agents IRS Forms 1099 to reflect the commission payments John Hancock made to Sub-Agents.  Instead, John Hancock delegated those responsibilities entirely to the General Agents.

23.     Although there was no contractual restriction preventing General Agents from *increasing* the commission payments owed to Sub-Agents – for example, by offering a given Sub-Agent part of the General Agent's commission as an incentive – they had no discretion to *decrease* commissions earned by, and owed to, Sub-Agents pursuant to the terms of the John Hancock sub-agency contracts.

24.     John Hancock continued to have General Agents pay Sub-Agent commissions, and prepare and disseminate related IRS tax forms at all relevant times, despite having

previously and repeatedly been informed that certain General Agents were failing to pay their respective Sub-Agents substantial portions, if not all, of the commission payments earned by and owed to the Sub-Agents under the terms of John Hancock's sub-agency contracts.

25.     Moreover, despite John Hancock's unusual practice of using an intermediary to pay Sub-Agent commissions, and despite having received numerous complaints of General Agent non-payment of Sub-Agent commissions, John Hancock employed no internal controls whatsoever to ensure that Sub-Agents received the commissions they had earned and/or otherwise failed to supervise John Hancock's General Agents to ensure that Sub-Agents ultimately received the residual commission payments they earned and were owed under the Company's sub-agency contracts.

26.     Among other controls that John Hancock lacked and/or supervision John Hancock failed to provide, the Company failed to have policies and/or practices in place:  (1) to require that General Agents, upon receiving Sub-Agent commission payments, paid those commissions to Sub-Agents by a date certain; (2) to provide Sub-Agents with written confirmation, independent of General Agent communications with Sub-Agents, of periodic commission payments the Sub-Agents should expect to receive from General Agents; (3) to confirm with Sub-Agents regularly that they received periodic commission payments owed to them; (4) to confirm with Sub-Agents regularly that they received applicable tax forms (Form 1099) reflecting periodic commission payments owed to them; (5) to audit General Agents to ensure that Sub-Agent commission payments were being made in their entirety and in a timely manner; and (6) to penalize General Agents who did not pay Sub-Agent commissions in their entirety in a timely manner.

**II.**     **John Hancock Fails To Ensure That All Sub-Agents Receive Commission Payments**

27.     On or around September 2001, Plaintiff entered into a sub-agency agreement with John Hancock and a General Agent (New York Penn Plaza Schwartz General Agency ("Schwartz") (2001-2008); Penn Plaza Partners LLC ("Penn Plaza") (2008-2011); Atlantic Partners Financial Group LLC ("Atlantic") (2011-present)), whereby Plaintiff was appointed as a Sub-Agent for the sale of John Hancock insurance products.  Plaintiff's sub-agency arrangement is substantially similar to all other John Hancock sub-agency arrangements.

28.     From 2005-2009, Plaintiff received from Schwartz or Penn Plaza both its initial and residual commission payments owed by John Hancock.

29.     From 2010 - present, however, Plaintiff did not receive any commission payments from John Hancock, Schwartz, Penn Plaza, or Atlantic.

30.     Sometime in late March 2013, Plaintiff learned that, despite not receiving any commission payments from 2010 - present, it had, in fact, earned residual commissions during that time period on its prior sale of John Hancock insurance products and that John Hancock had paid its commissions to a General Agent (Penn Plaza or Atlantic).  Plaintiff further learned that John Hancock did not have any procedures or internal controls in place to ensure that Sub-Agents like it ultimately received the commissions they earned under their contractual arrangement with the Company and/or that the Company did not properly supervise Penn Plaza and Atlantic, or any other of its General Agents, to make sure that Sub-Agents such as Plaintiff were paid the commissions owed to them.

31.     Subsequently, Plaintiff learned of other John Hancock Sub-Agents who had been similarly victimized when the General Agent through whom they were affiliated with John Hancock failed to pay earned and due and payable commission payments.

32.     Accordingly, given the breadth of John Hancock's substantial network of 1,900 general agents and tens of thousands of sub-agents, Plaintiff believes that its circumstances are by no means unique and that Defendants' failure to pay its Sub-Agents directly according to industry standards and/or Defendants' failure to supervise its General Agents to make sure such Sub-Agent commission payments were made, caused Plaintiff and the members of the putative Class to suffer significant damages.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a putative class consisting of all John Hancock Sub-Agents who did not receive residual commissions earned on the sale of John Hancock insurance products from May 8, 2007, through the present.  Excluded from the putative Class are Defendants, their employees, officers, directors, legal representatives, successors, subsidiaries, and affiliates.

34.     The members of the putative Class are so numerous that joinder of all members is impracticable.  Although the exact number of putative Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are hundreds of members of the putative Class.

35.     Common questions of law and fact exist as to all members of the putative Class and predominate over any questions affecting solely individual members of the putative Class. Among the questions of law and fact common to the putative Class are:

(a)     Whether John Hancock had a duty to supervise its General Agents to ensure that Plaintiff and the members of the putative Class received residual commissions earned on the sale of John Hancock insurance products;

9

(b)     Whether John Hancock breached a duty to supervise its General Agents to ensure that Plaintiff and members of the putative Class received residual commissions earned on the sale of John Hancock insurance products;

(c)     Whether Defendants' conduct alleged herein constitutes a violation of the Massachusetts Consumer Protection Act;

(d)     Whether Defendants' unfair and/or deceptive acts or practices, as alleged herein, harmed Plaintiff and the members of the putative Class;

(e)     Whether Defendants made and breached their contracts with Plaintiff and the members of the putative Class;

(f)     Whether the members of the putative Class have sustained damages as a result of the conduct complained of herein and, if so, how those damages should be calculated; and

(g)     Whether the members of the putative Class are entitled to injunctive relief.

36.     Plaintiff's claims are typical of the claims of the members of the putative Class as Plaintiff and members of the putative Class sustained damages arising out of Defendants' wrongful conduct as complained of herein.  The relief Plaintiff seeks is typical of the relief sought by the members of the putative Class.

37.     Plaintiff will fairly and adequately protect the interests of the members of the putative Class and has retained counsel competent and experienced in class litigation.  Plaintiff has no interests antagonistic to, or in conflict with, those of the members of the putative Class.

38.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all members of this putative Class is impracticable. Furthermore, the expense and burden of individual litigation make it impossible for the putative

Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### NEGLIGENCE

39.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

40.     Defendants owed a duty of care to Plaintiff and the putative Class members, at a minimum, to supervise the activities of its General Agents to ensure that Plaintiff and members of the putative class, as Sub-Agents of John Hancock, were provided with the full amount of the residual commissions that they earned and to which they were entitled.

41.     Defendants failed to exercise reasonable care when they established a commission payment structure that utilized General Agents as intermediaries for Sub-Agent commission payments despite knowing that certain General Agents had failed to make such payments in the past.

42.     Defendants failed to exercise reasonable care in supervising the activities of its General Agents to ensure that they paid Plaintiff and the members of the putative Class the full amount of the residual commissions that they earned and to which they were entitled.

43.     Defendants failed to exercise reasonable care by lacking sufficient internal controls to ensure that both that General Agents provided Sub-Agents with commission payments and related tax documents by a date certain and that those General Agents who did not were appropriately penalized.

11

44.     As a direct and consequent cause of Defendants' conduct, Plaintiff and the putative Class members suffered damages.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

45.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

46.     John Hancock entered into contracts with Plaintiff and the members of the putative Class whereby Plaintiff and the Class members agreed to sell John Hancock insurance products in exchange for being paid initial and residual commissions by John Hancock on the sale of those insurance contracts.

47.     Defendants failed to pay residual commissions earned by Plaintiff and the members of the putative Class on the sale of John Hancock insurance contracts, thereby breaching their contracts with Plaintiff and the members of the putative Class.

48.     Plaintiff and the members of the putative Class were damaged by Defendants' failure to pay residual commissions on their sale of John Hancock insurance contracts.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT, MASS. GEN. LAWS CH. 93A, § 11

49.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

50.     Defendants' conduct alleged herein was willful, reckless, wanton, egregious, unfair, unethical, deceptive and unscrupulous, including:  (1) their decision to establish a commission payment structure at John Hancock using General Agents as intermediaries for Sub-Agent commission payments when they knew that certain General Agents had failed to make

such payments in the past; and (2) their failure to supervise John Hancock's General Agents and/or establish any internal controls to ensure that General Agents paid Sub-Agent commissions when they knew that the Company had past problems with General Agents failing to pay such commissions.

51.     Defendants' conduct, which was in or affecting commerce, constitutes unfair and/or deceptive acts or practices within the meaning of Mass. Gen. Laws. Ch. 93A, § 11 and the common law.

52.     As a proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and members of the putative Class were injured in an amount that will be proven at trial, and are entitled to monetary relief pursuant to Mass. Gen. Laws. Ch. 93A, § 11 and other applicable law, including without limitation punitive damages or treble damages and attorneys' fees and costs pursuant to Mass. Gen. Laws. Ch. 93A, § 11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on its own behalf and on behalf of the putative Class, prays for judgment as follows:

(a)     Determining this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, or alternatively certifying all issues and claims appropriate for class treatment;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the putative Class against all Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(c)     Awarding Plaintiff the fees and costs incurred in this action to the extent allowed by law, including without limitation a reasonable allowance of fees for Plaintiff's attorneys and experts, pursuant to Mass. Gen. Laws Ch. 93A and other applicable law;

(d)     Awarding punitive damages and/or treble damages pursuant to Mass. Gen. Laws

Ch. 93A;

(e)     Granting equitable and/or injunctive relief as permitted by law and/or equity; and

(f)     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

May 8, 2013                                   **BERMAN DEVALERIO**

By:  */s/ Glen DeValerio*
     Glen DeValerio (BBO # 122010)
     gdevalerio@bermandevalerio.com
     Bryan A. Wood (BBO # 648414)
     bwood@bermandevalerio.com
     Justin Saif (BBO # 660679)
     jsaif@bermandevalerio.com
     John H. Sutter (BBO # 630917)
     jsutter@bermandevalerio.com
     One Liberty Square
     Boston, MA 02109
     Telephone:  (617) 542-8300
     Facsimile:  (617) 542-1194

     *Attorneys for Plaintiff*

14